# McEachin v. Warren.

*Statutory Action in nature of Ejectment.*

1. *Legal and equitable titles*—In ejectment, or the statutory action in the nature of ejectment, the legal title must prevail, and the court can not take cognizance of equitable rights.

2. *Purchase at judicial sale.*—A judicial sale is not complete until confirmed by the court, and the officer's deed to the purchaser, without proof of the report and confirmation of the sale, confers no title on which he can maintain or defeat an action at law.

3. *Same; amendment nunc pro tunc.*—If the lands sold are incorrectly described in the report of the sale, the decree confirming it, and the deed to the purchaser, a subsequent correction of the deed, by order of the court, without a corresponding correction of the report and the decree, does not avail anything to the purchaser; and these can not be corrected *nunc pro tunc* without notice to the party in adverse interest, especially after the dismissal of the suit in which the decree of sale was rendered.

APPEAL from the Circuit Court of Sumter.
Tried before the Hon. SAM. H. SPROTT.

J. J. ALTMAN and A. B. McEACHIN, for appellants.—The lower court erred in giving the general affirmative charge in favor of plaintiff, because the proceedings in the suit by Moody, as assignee, and sale under said proceedings, together with the deed of October, 1890, in the absence of a *supersedeas* bond by Mrs. Warren or Kennedy, vested the legal title in Cochran and McEachin.—*Phillips v. Benson*, 85 Ala. 416; *Marx v. Cowles*, 61 Ala. 299.

[McEachin v. Warren.]

PETTUS & PETTUS, and REUBEN CHAPMAN, *contra.*—Both parties in this case claim under John S. Kennedy, and the party who establishes that title in himself must recover. The plaintiff claims under a deed from said Kennedy, which is regular in form, and which was executed ten years before the institution of the proceedings in bankruptcy; and this title must prevail, unless there is proof that it has been legally devested. It certainly was not devested by the decree in the suit by the assignee, for the final decree in that suit dismissed the bill for want of equity. It was not devested by the sale under the decree of the District Court, although that sale was reported and confirmed; because there was a mistake in the description of the land, which would have rendered the proceedings inadmissible as evidence at law. The defendants can not invoke the doctrine which protects a purchaser at a judicial sale, notwithstanding a subsequent reversal of the judgment or decree; because that doctrine is intended only to protect a purchaser of the legal title, and here the legal title to the land in controversy never passed by the sale; and if the purchaser had filed a bill to correct the mistake, it could not have prevailed against the legal title and superior equity of Mrs. Warren. The new or amended deed, without any thing to support it, shows no title. If an attempt had been made to correct the report and decree confirming the sale, notice to the defendants would have been necessary; and the attempt would have been defeated, because the court had lost all jurisdiction over the case.

STONE, C. J.—This was a statutory real action by Mrs. Vernon K. Warren to recover a tract of land of some thousand and fifty acres, situated in Sumter county, Alabama. Both parties claimed title under John S. Kennedy, who acquired his title by purchase in 1863. In December, 1866, Kennedy, for love and affection, conveyed the lands to Mrs. Warren, his daughter, then recently married. In 1867 she took possession of the lands under the deed, held them as of right for more than ten years, and without any adversary claim by any one, until the institution of proceedings, after noticed, to subject them to sale in payment of the debts of John S. Kennedy, her father and voluntary grantor. The lands are in township twenty-one (21) North of St. Stephens.

John S. Kennedy was adjudged bankrupt in July, 1876, and Moody and McLester were appointed his assignees. He owed debts at the time of the gift to his daughter, which have never been paid. In 1878, about eleven or twelve years after Mrs. Warren took possesion under her father's gift, the assignees filed a bill in the court of bankruptcy, for the purpose of sub-

jecting the lands to the payment of the bankrupt's debts. Kennedy and Mrs. Warren, together with her husband, were made parties defendant. The ground on which the relief was prayed was, that Kennedy was indebted when he made the voluntary conveyance to his daughter, and that some four thousand dollars or more of those debts remained unpaid when the bill was filed. The Bankrupt, or District Court granted relief, and decreed that the lands be sold in payment of Kennedy's debts. There was an appeal from this decree to the Circuit Court of the United States, and the decree of the District Court was there affirmed. There was then an appeal to the Supreme Court of the United States, but no *supersedeas* bond was executed on this appeal.

While the case was pending in the Supreme Court of the United States, and before decision there, McLester having died, Moody, the surviving assignee, acting under the decree of sale, advertised the lands for sale, sold them to the highest bidder, and Friedman was proclaimed purchaser at the price of fifteen hundred dollars. Before any steps were taken to perfect this purchase, Friedman transferred his bid to McEachin and another, assigned to them his rights as purchaser, and they took upon themselves the burden of the contract of purchase. Moody, the assignee, assented to this transfer, and agreed to accept them as purchasers in the place of Friedman, who had been announced as the purchaser. Up to this point there was no irregularity of proceedings upon which we need comment.

Moody attempted to report the sale to the court of bankruptcy, but, in doing so, he misdescribed the lands. He described them as in township twenty (20), instead of twenty-one (21), their true number. The sale was confirmed, an order made to make title, and title actually made: and all this in the erroneous number of township twenty (20). The purchase-money was paid, and the purchasers let into possession. This was about the year 1883, and before the decision of the case in the Supreme Court of the United States. They are still in possession.

At the October Term, 1886, of the Supreme Court, U. S.— May 23, 1887—the case of *Warren v. Moody* was decided, 122 U. S. 132. The decision of the lower courts was reversed for want of equity in the bill, and the cause remanded, with an order that the case be dismissed. That order was obeyed, and the case dismissed out of the Bankrupt or District Court. In this condition of the title and possession, Mrs. Warren, in June, 1889, instituted the present statutory real action to regain possession of the lands.

There can be no question that, as the title then stood, Mrs. Warren had the legal title to the land, and must have succeeded in her action for its recovery. With us, courts of law can regard only legal titles to realty.—3 Brick. Dig. 325, §§ 33, 39.

After this action was brought, and long after the suit ordering the sale of the land was dismissed out of the District Court, an effort was made to cure the misdescription of the lands. A brief summary of what the record discloses will show how this question comes before us.

The case was tried in the Circuit Court of Sumter County, October 15th, 1890. In defense, a deed was put in evidence, bearing even date with the day of trial, made by Moody, assignee, to McEachin & Cochran. Objection was made to the introduction of the testimony, the objection was over-ruled, and the plaintiff excepted. The deed shows on its face that it is substituted for the former deed, and is different from it, as we must suppose, only in that it sets forth the true numbers of the land, placing them in township twenty-one (21). The deed contains the following recitals: "Whereas, at the sale of the lands aforesaid [they had been described before this clause was reached], the same were knocked off to one Bernard Friedman, of the County of Tuskaloosa, at the sum of fifteen hundred dollars, that being the highest and best bid for the same. And whereas the said Bernard Friedman afterwards assigned and transferred in writing his bid for said lands to A. B. McEachin and William G. Cochrane; and whereas, upon a report of said sale and transfer being made to the District Court, sitting in equity, by the said Frank S. Moody, assignee as aforesaid, the said sale and transfer was in all things confirmed by the court, and the said Frank S. Moody, assignee as aforesaid, was ordered to make titles to the lands aforesaid to the said A. B. McEachin and the said William G. Cochrane." Then follows the granting clause of the deed. Following this, the conveyance has this language: "This conveyance is made in pursuance of an order and decree rendered, on, to-wit, the 13th day of September, 1890, by the District Court of the United States in and for the Middle District of Alabama, sitting in equity, by which order and decree the deed executed on January 19, 1883, by the undersigned, granted to the within named grantees, was ordered to be corrected *nunc pro tunc* as to the description of the lands intended to be conveyed, so as to make the corrected deed describe and embrace the lands that are embraced herein. Therefore this deed, which is made to correct said former deed, in pursuance of said decree, is executed as of the 19th day of January, 1883."

[McEachin v. Warren.]

It will be borne in mind that in the report of sale made by the assignee—January, 1883—the lands are described as in township twenty (20), and the decretal order of confirmation —February 5, 1883—has the same misdescription. These are set out in full in the transcript before us. The deed first made —of January, 1883—is not in the transcript. Neither does it contain the order made *nunc pro tunc* on September 13. 1890, nor the petition, or motion on which that order was made. All the information we have on these subjects is found in the extracts we have copied from the assignee's deed of October 15, 1890. These inform us that the order of the District Court, sitting in equity, made *nunc pro tunc*, corrected the description of the lands in the deed, and they give us no other information. This leaves the misdescription of the lands— township twenty, instead of twenty-one—as originally made, alike in the report of the sale and in its confirmation. In other words, the defense failed so show any report or confirmation of sale, of the lands claimed to have been purchased.

The sale in this case was strictly a judicial sale, in which case "the court is, in legal effect, the seller. Until confirmed by the court it is not complete, and confers no rights."— *Bland v. Bowie*, 43 Ala. 152, 159; Freeman on Void Sales, § 43; 12 Am. & Eng. Encyc. of Law, 219. The alleged sale, as evidenced by the conveyance, was never confirmed by the court. It is not even shown to have been reported to the court. The record fails to show any divestiture of Mrs. Warren's title, and the Circuit Court did not err in giving the general charge in favor of the plaintiff.

Many questions were reserved and argued, which the conclusions announced above relieve us of the duty of considering.

Should further litigation be contemplated, it would be well to consider whether the District Court has jurisdiction of the questions necessary to be raised. It is shown by the record that Moody's suit against Kennedy, under which the lands were decreed to be sold, was long ago dismissed out of that court, in obedience to the mandate of the U. S. Supreme Court. Now, while it may be true that all courts have the inherent right to make their records speak the truth, even after final disposition of the cause, has not that right some limitations? Is it not, in such a case as this, limited to that class of clerical errors, which the record itself, without more, furnishes the means of correcting? Can it be extended to conditions which require new pleadings or process, or which invoke judicial action on new presentations of fact, or on averments of fact on which issues may be formed? We merely suggest these inquiries, without intending to answer

[Murray v. Hoyle.]

them. It would seem clear, however, that to so perfect the sale and purchase in the case we have in hand, as to vest a legal title in the purchasers, would require a new report of sale, an order of the court allowing it to take the place of the first and erroneous one, and then a new order of confirmation of sale as reported. And such orders could not be obtained without notice to the parties whose title was proposed to be devested thereby.—1 Black on Judgments, §§ 134 *et seq.*; Freeman on Void Judicial Sales, §§ 64 *et seq.*; Code of 1886 § 2867.

The judgment of the Circuit Court is affirmed.

CLOPTON, J. not sitting.

### *Statutory Action in nature of Ejectment.*

